1821.

SCHUYLER
v.
HOYLE.

SCHUYLER and others *against* HOYLE and his wife.

If a husband appoints an attorney to recover a debt, legacy, &c., due to his wife, and the attorney receives the money; or if the husband mortgages his wife's interest, or assigns it absolutely, for a valuable consideration, or if he recovers it by a suit at law, in his own name, or releases the debt, the right of survivorship in the wife, in these cases, ceases.

In a suit by the husband for the wife's legacy or distributive share, the wife must be made a party.

Where the husband and wife, and others, heirs of *F.* deceased, intestate in *England*, made a joint power of attorney to *V.*, authorizing him to take out letters of administration there on the estate of *F.*, to collect the property, &c., and pay over to the parties their distributive shares, respectively, &c.; and after *V.* had taken out administration, and obtained possession of the property, but before he had paid over the entire share, the husband died : *Held*, that the wife was entitled, in her own right, as survivor, to that portion of her distributive share, which had not been actually paid over to her husband.

*April 27th.*

THE bill stated, that *Henry Ten Eyck Schuyler* died seized of a large real and personal estate, *intestate*, on the 25th of *September*, 1812, leaving *Sally S.* a *widow*, mother of the plaintiffs, and the plaintiffs, and *J. B. S.* his only children; and that *J. B. S.* died an infant, on the 16th of *January*, 1817. That on the death of the intestate, the

widow, as natural guardian to the plaintiffs, took possession of the real estate, and from the death of the intestate, until her marriage with the defendant, *Henry Hoyle,* received the rents and profits. That she possessed herself of the personal estate, and sold a large part thereof. That since her marriage with *H.* on the 30th of *January,* 1817, the defendant *H.,* her husband, had received the rents and profits of the real estate, and possessed himself of the personal estate, which remained in her hands, to the amount of 50,000 dollars. That the defendants had possessed themselves of all the deeds and muniments of the estate, and had refused to account, &c. *Prayer,* that the defendants be decreed to account with the plaintiffs, touching the real and personal estate of the intestate, and for general relief, &c.

The material facts appearing in the *answer,* and from the *proofs* taken before the master, in regard to the question argued and decided, are, that Mrs. *S.,* widow of the intestate, now Mrs. *Hoyle,* was one of the heirs at law of *Gerrit Fisher,* who died intestate, in *England,* prior to *June,* 1811, leaving a large personal estate, of which she, as one of the heirs and next of kin, was entitled to one *twelfth,* as her distributive share. She succeeded to that share while she was the wife of *H. T. E. Schuyler;* and on the 19th of *June,* 1811, the legal representatives of *Gerrit F.* entered into an agreement, by deed, with *N. I. Visscher,* to which instrument *S.* was a party, and which also purported to be made by *his wife,* as a party, but was not, in fact, executed by her. This agreement recited that a letter of attorney had been executed by the *said parties* to that deed, (being the legal representatives of *G. F.*) and, of course, by " *Henry Ten Eyck Schuyler* and *S.,* his wife,'' to *N. J. V.,* authorizing him to proceed to *London,* and there sue out letters of administration, and collect the property of *G. F.* deceased, and pay his

debts; and after deducting reasonable expenses, and a reasonable sum stipulated for his own compensation, to pay over " to the said parties of the second part respectively," which, of course, included S. and his wife, their respective distributive shares. The agreement then provided that N. J. V. should proceed forthwith to England, and there, in the mode he should deem best, should execute the power; and after paying the debts, and deducting expenses, and a reasonable sum to cover allowances for his services, to remit the residue of the property of G. F., the intestate, to Thomas Eddy of New-York, to be by him deposited in the Bank of New-York, in the name of N. J. V., and to be by him distributed as before mentioned. The rest of the agreement related to the compensation to be allowed to N. J. V.

Under this authority, N. J. V. went to England, where he arrived in August, 1811, and took out letters of administration on the estate of G. F., in England; and on the 12th of October, 1811, he took out letters of administration on the intestate's estate in Ireland, and collected and converted most of the assets into American stocks and British goods, within one year after he arrived in England, He remitted the stocks to Barent Bleecker of Albany, and the goods to Peter Remsen of New-York, who sold the goods, and paid the proceeds to N. J. V., with whom, in character of administrator, P. R. accounted, and to whom, as his principal, he paid the proceeds.—H. T. E. Schuyler died the 25th of September, 1812, subsequent to which time, P. R. paid the proceeds of the goods, amounting to 400,000 dollars to N. J. V., who, afterwards, paid the amount over to B. Bleecker, to be distributed among the heirs of G. F. The stocks remitted by N. J. V. to Bleecker, came into his hands before the death of S. The amount received by B. prior to the death of S., was 123,078 dollars and fifty-eight cents, and the amount received by him after the

death of *S.*, was about 400,000 dollars. The amount of the distributive share of Mrs. *S.*, was 48,342 dollars and 98 cents, including 1950 dollars, being the value of certain lands belonging to the estate, not sold before the death of *S.* Of this distributive share *B.* paid to *S.* in his life time, 11,815 dollars and 29 cents, and the residue to his widow, (now Mrs. *H.*) after his death. So that *S.* received, during his life, above 1500 dollars more than his wife's distributive share of that portion of the estate of *G. F.*, which came to the hands of *B.* in the life time of *S.*

In the receipt of the moneys, and in the transaction of the business, *B.* acted under letters of attorney, dated *January* 6, 1812, from the legal representatives of *G. F.*, and which was executed by *S.* " in behalf of his wife, *Sarah Ten Eyck Schuyler.*" This power authorized *B.*, as their attorney, to demand, sue for, collect, and receive all debts and moneys due *G. F.* at the time of his death, and to take security in their names, if requisite, to liquidate debts and demands, and to pay debts due from the estate of *G. F.*, or from them as heirs, and to sue out letters of administration on the estate of *G. F.*, if necessary, and to sell at auction such parts of the estate as he should deem best, and, after deducting expenses and allowances, to distribute the estate, as follows, " amongst us, our heirs, executors, administrators, or assigns, according to our respective rights in, and to the real and personal estate of, *G. F.*"

*Buel*, for the plaintiffs, contended, 1. That upon the death of *Gerrit Fisher*, the distributive share of the wife of *H. T. E. Schuyler*, in his estate, became absolutely vested in her husband. Such distributive share becomes vested from the time of the death of the intestate; (except in the case of a posthumous child;) so that if the person entitled to it, die within a year after the intestate, and before the estate is actually divided, the share goes to the next of kin of the deceased.

(*Toller's Law of Executors*, 386. 1 *Madd. Ch.* 517. 3 *Bac. Abr.* 75. *tit. Executors*, &c. 1.) In *Browne* v. *Shore* and wife, (1 *Shower*, 25.) J. S. died intestate, and *A.* and *B.* who were his next of kin, died within a year after, and before distribution of the intestate's estate : *Holt*, Ch. J., and the rest of the Court, held, that *A.* had a vested interest, which went to his *executors*. In *Cary* v. *Taylor*, (2 *Vern.* 302.) *A.* married *B.*, the daughter of J. S., who died intestate. *B.* died before the distribution of her father's estate. *A.* also died before distribution or administration. The plaintiff was administrator to *A.*, the husband, and the defendant was the administrator of *B.*, the wife ; and the question was, which of them had the right to the share of J. S.'s estate, remaining undistributed. It was admitted, on all hands, that the share to which *B.* was entitled, was a *vested* interest, before any distribution was made ; but the doubt was, whether it was so vested, as *a legacy assented to*, that it would vest in the husband, without his taking administration to his wife. The question does not appear to have been decided in that case ; but the doubt raised was not well founded. *Comyns* (2 *Comyn's Dig. tit. Baron and Feme*, E. 3. 2 *Roll.* 134.) says, " If a legacy be given to a *feme covert*, to be paid in twelve months after the testator's death, and the wife dies within the twelve months, the interest goes to the husband, for it was vested in him, and he might release it within the twelve months." (*Robertson* v. *Taylor*, 2 *Bro. Ch. C.* 589. 2 *P. Wms.* 49. *n. d. Grice* v. *Grice*, *Edwards* v. *Freeman*, 2 *P. Wms.* 441.) The doubt in *Cary* v. *Taylor*, seems to have arisen from the circumstance, that the husband had not administered on the wife's estate. But it is now well settled, that this circumstance is of no moment ; for the wife's *choses in action* go to the representatives of the husband, although he has not administered on her estate, and not to the wife's next of kin. (*Whitaker* v. *Whitaker*, 6 *Johns. Rep.* 112.)

It follows, then, that a distributive share is *a vested* inte-

rest from the time of the intestate's death; and it must *vest*
in the *husband*, not in the wife; for a married woman can-
not, during coverture, acquire any property, unless given
specially to her *separate use*, and through the medium of
*trustees*. All her acquisitions of personal property, during
coverture, belong to her husband. For this reason, *indebi-
tatus assumpsit* for work done by the wife, will not lie by
the husband and wife, but the husband must sue alone. (2
*Comyn's Dig. tit. Baron and Feme, W.* 1 *Salk.* 114. 1 *Chit-
ty's Pl.* 19.) A note given to the wife, during coverture, is
part of the husband's assets. (*Hodges v. Beverly, Bunb. Rep.*
188.) So, if a bond is given to the wife, the husband must
sue alone for it. (2 *Atk.* 208. 2 *Mod.* 217. 4 *Term Rep.*
616. 3 *Lev.* 403.) Where a legacy was given to a *feme
covert*, who lived separate from her husband, and the execu-
tor paid it to the wife, and took her receipt, yet on a bill
brought by the husband, the executor was decreed to pay it
over again, with interest. (1 *Bac. Abr. tit. Baron and Feme,
D.* 1 *Vern.* 261.)

The cases which seem to support a contrary doctrine, or
to recognize the right of survivorship in the wife, as to her
*choses in action*, are those in which the wife was entitled to
them *before marriage*, and they had not vested in the husband;
or where the husband had elected to sanction the wife's right
of survivorship, by joining with her in an action, &c.; or
where bonds, notes, &c. have been taken to the husband and
wife jointly, and the husband has done no act to alter the
property, and thus impliedly assented to her right of sur-
vivorship. (*Comyn's Dig. tit. Baron and Feme, F.* 1. *F.* 2.
1 *Vern.* 396. 1 *Fonbl. Equ. B.* 1. *ch.* 4. *s.* 24. *n.* (*y.*)
Both *Comyn* and *Bacon*, as well as others, make the distinc-
tion between property, or *choses in action*, to which the wife
was entitled *before* marriage, and such as accrue to her, du-
ring coverture; and they all agree that the husband has an
*absolute property* in all the acquisitions of the wife, during
coverture, whether by gift, devise, or by her labour. (*Comyn's*

*1821.*

Schuyler
v.
Hoyle.

1821.

Sch ler
v
Hoyle.

*Dig. Baron and Feme, E.* 3. *Bac. Abr. Baron and Feme, D.* C. 3. 2 *Roll.* 134. *Comyn's Rep.* 725.)

This doctrine is also fully recognized by Judge *Reeves,* in his work on " *Domestic Relations,*" p. 60. 63. He says, " personal property acquired *after marriage,* by her means, belongs absolutely to the husband ; so that if a legacy should be given to the wife, during coverture, and the husband should die before it is paid, or due, it would not belong to the wife, but to the husband's executor." He asserts the same thing in regard to the wife's distributive share; and *Toller* says, that a distributive share is just like a residuary legacy.

2. But if it was necessary that *S.* should have altered the property in order to vest the title in him, enough has been done by him for that purpose. He, together with the others, executed a power to *V.* to collect the property, by virtue of which *V.* took out administration in *England,* and collected all the property, before the death of *S.* So that *Bleecker* was the attorney in fact of *S.* and the others in this country, and acted under the power. Now, it is well settled, that if a husband gives a power of attorney to recover his wife's debt, legacy, or other *chose in action,* and the attorney does receive it, although it does not actually come to the hands of the husband, yet it is, absolutely and indefeasibly, his property. (1 *Bac. Abr.* 480. *tit. Baron and Feme, C.* 3. *Roll. Abr.* 342. *Moore,* 452. *Golds.* 160. *Reeves' Dom. Relat.* 4. *Conyn's. Dig. tit. Baron and Feme E.* 3. A voluntary assignment by the husband of his wife's distributive share, makes it the property of the husband, though the assignment, as between him and the assignee, is void. (1 *P. Wms.* 380.) So, an order of the Court of Chancery to pay the wife's legacy to the husband, vests it in the husband, though he dies before payment, and defeats the wife's right of survivorship. (3 *Bro. C. C.* 362.) So, a judgment recovered at law, by the husband, has the same effect; (1 *Fonbl. Equ. B.* 1 *ch.* 4 *sec.* 24.) though it is

otherwise, if the husband is joined. The principle on which these cases are founded is, that where the husband has done any act in relation to his wife's *choses in action*, manifesting his intention to appropriate them to himself, the law deems it such a reduction into his possession, as vests him with the property.

*J. Paine,* contra, contended, 1. That the husband has only a qualified interest in his wife's *choses in action*; and unless he reduces them into possession, by action, or otherwise, during his life, they belong to the wife, in case she survives him. (*Toller's L. of Ex.* 219. *B. 2. ch. 5. s. 2. 3 Vesey,* 469. *Co. Litt.* 351. *b.* 9 *Vesey,* 87.) It is true, that if the husband survives the wife, he alone is entitled to her personal property, or *choses in action.* (6 *Johns. Rep.* 112. 1 *N. R. L.* 314. *s.* 17. *Co. Litt.* 351. *b.*)

2. What acts, then, were done by *S.* in his life time, to reduce the distributive share of his wife in the estate of *G. F.* to his possession ? The power of attorney to *V.* was in the name of *S and his wife,* and the other persons ; and *V.* was to pay over her share, after deducting charges, &c. to *S. and his wife.* This was the only authority under which *V.* acted. Though the agreement was not, in fact, executed by the wife of *S.,* yet she was made a party, and it *recites* the power of attorney, and that the *said* parties executed the power. It must be taken, as fact, therefore, that *S. and his wife* executed the power, and *V.* was to pay over her distributive share to herself and husband jointly.

Admitting, then, the rule of law to be, (*Toller,* 221, 222.) that if the husband gives a letter of attorney, to receive a debt or legacy due to his wife, and the attorney receives it, but the husband dies before it it is paid over to him, it will go to his executors, it does not follow, that it will be considered as reduced to the possession of the husband, where the power, as in this case, is given by the husband and wife,

1821.

SCHUYLER
v.
HOYLE.

jointly, and the attorney is to pay over the money to them jointly. The husband may sue alone for the debt or legacy · due to his wife; but if he joins the wife, and recovers judgment, it will survive to her. (1 *Fonbl. Equ.* 314. *n.* *Toller's L. E.* 220. 4 *Hen. & Munf. Virg. Rep.* 452.) The reason of the distinction is, that by bringing the action in his own name, he signifies his disagreement to the wife's interest, and his intent that it shall not survive to her ; but where the action and recovery is in their joint names, it shows that his intention is not to alter the property. (*Wildman* v. *Wildman,* 9 *Vesey,* 176.) In *Baker* v. *Hall,* 12 *Vesey,* 496.) where the husband entered into possession of the real and personal estate of the testator, as executor and trustee under the will, and disposed of part, the Master of the Rolls held, that the husband must be deemed to have taken possession as executor and trustee only, and that, therefore, his wife's share of the residue of the testator's estate, could not be considered as so reduced to the possession of the husband as to prevent its surviving to the wife, upon his decease ; and, of course going, upon her death, to her personal representatives. So, ' in the case of *Wall* v. *Tomlinson,* (16 *Vesey,* 413.) the Master of the Rolls held, that stock belonging to the wife was not reduced to the possession of the husband by a transfer to him merely as trustee; for the transfer was made *diverso intuitu.* If, then, the principles deduced from these authorities be correct, it might be safely admitted, that *V.* had, by virtue of the power from *S. and his wife,* and the others, obtained full possession of all the property, in the life time of *S.* But the fact is, that the estate of *G. F.,* which consisted principally in *Bank of England* and *British* government stocks, was not transferred to him, as the agent or attorney of the legal representatives of the intestate, but in his character of *administrator.* He could not have obtained the property except as administrator. Having duly obtained letters of administration on the estate, according to the laws of that country, his character as agent

or attorney ceased, or became merged in that of adminis-
trator. If the property had been transferred to *S.* himself, as
*administrator* of the estate of *G. F.* the possession, accord-
ing to the cases which have been cited, would not have been
such as to prevent, in case of his death, his wife's claim as
survivor. *A fortiori*, then the possession of *V.* as administra-
tor, would not be sufficient to produce that effect.   The
claim or interest of *S.* was only under the statute of  distri-
bution, or a mere *chose in action*. (3 *Vesey*, 469.) Again ;
*S.* could not, at the time of his death, have enforced  that
claim, either at law, or in equity.  *V.* arrived in *England*, in
*August*, 1811 ; the date of the letters of administration grant-
ed to him in *England*, does not appear.   Those in *Ireland*
were dated *October* 12, 1812.    *S.* died, *September* 26th,
1812.  A year, therefore, had not elapsed at the death of *S. ;*
and by the statute of  22 and 23  *Charles I. c.* 10. no dis-
tribution of an intestate's estate can be made, until after the
expiration of one year from the time of  granting administra-
tion ; and the administrator is allowed a year to render his
account, and close the estate. (*Toller*, 97.)

But admitting that *S.* could have enforced his claim for his
wife's share, it must have been in a   Court of  Equity, not
in a Court of Law ; (5 *Term. Rep.* 692.  5 *Vesey*, 516.
*Toller's Law of Ex.* 479. 489.) and she must have  been
joined in the suit.  (1 *Madd. Ch.* 384.  1 *Fonbl. Equ.* 318.
3 *Vesey*, 469. 5 *Vesey*, 516.) And if he died pending the
suit, the right would survive to her ; or if  there had  been
a decree, she would have had the benefit of it.  (1 *Ch. Cas.*
27. 4 *Hen. & Munf. Virg. Rep.* 452.)

THE CHANCELLOR.   The question submitted in this case
is, how far, and to what extent, *Henry T. E. Schuyler*, de-
ceased, had reduced to possession the distributive share be-
longing to his wife, of the estate of *Gerrit Fisher*, deceased,
so as to be enabled to transmit the same, as part of his per-

sonal estate, to the plaintiffs, his children, and prevent it from surviving to his wife?

After stating the facts of the case, his Honour proceeded *

The only point in the case, arising from these facts, is, whether the distributive share of the 400,000 dollars, belonging to Mrs. *Schuyler*, and which came from *N. J. V.*, the administrator, to *Bleecker*, after the death of *S.*, did, or did not survive to the wife, as not having been reduced to possession by the husband, in his lifetime. I am relieved from the necessity of examining into the effect of the receipts by *B.*, prior to the husband's death, because his wife's share, and more than his wife's share of those receipts, were paid over to the husband. After looking into the authorities which have been referred to by the counsel, and upon a consideration of the doctrine of the cases, there remains no doubt in my mind, that the wife was entitled, as survivor, to all that portion of her distributive share which was not paid over to *Bleecker*, but remained in the hands of the administrator of *F.* at the time of her husband's death. There is not even colour for the pretension on the part of the plaintiffs, that the assets of *F.*, the intestate, which were in the hands of his administrator on the death of *S.*, were to be considered as no longer things in action, and held by him, as administrator, but as actually reduced to the husband's possession, so as to cut off the right of survivorship in the wife.

As I do not know that this question has ever been discussed in this Court, it will be satisfactory to review some of the leading cases.

We have no concern, at present, with the doctrine that establishes the husband's right to his wife's *choses in action*, in case he survives her. It appears to be settled, that he is, in that event, entitled to them, whether they were or were not reduced to possession by him, in her lifetime. Her whole personal estate in action, as well as in possession, vests in the husband upon her death, for his right to administer on her personal estate includes a right to her *choses in action.*

1821.

SCHUYLER
v.
HOYLE.

They vest in him by the statute of distributions, as her next of kin. (*Squib* v. *Wyn*, 1 *P. Wms.* 378. *Cart* v. *Rees*, cited, *ib.* 381. *Elliot* v. *Collier*, 3 *Atk.* 526. *Humphrey* v. *Buller*, 1 *Atk.* 458. *Co. Litt.* 351. *a.* note 304. *Whitaker* v. *Whitaker*, 6 *Johns. Rep.* 102.)

Nor have we any concern, at present, with the doctrine, that if the husband and wife give a letter of attorney to a third person, to receive a legacy due to the wife, as was the case in *Huntley* v. *Griffith*, (*Gouldsb. Rep.* 159. *Moore*, 452. *S. C.*) or if he alone gives a letter of attorney, according to the *dicta* of the judges in that case, a receipt by the attorney changes the property of the legacy, and transfers it to the possession of the husband. That doctrine does not apply, because the attorney, in the present case, did not receive the property for which the defendants are sought to be accountable, until after the husband's death. The present inquiry then is, whether there was any such interference, or change of the wife's property, by the husband, before his death, though it did not come actually into his possession, or into that of his attorney, as to take away the right of survivorship in the wife? And for the more full illustration of the point, we will see what acts the husband may do, to affect the wife's property, without reducing it to actual possession.

In the first place, he may assign, for a valuable consideration, his wife's *choses in action*. This was agreed to in *Carteret* v. *Paschal*, (3 *P. Wms.* 197.) and expressly decided in *Bates* v. *Dandy*, (2 *Atk.* 206.) The wife, in the last case, became entitled, during coverture, to a distributive share of an intestate's estate, and that share consisted of two mortgages, which the husband took and left with a creditor, under a promise to assign them, by way of security; but died before actual assignment. Lord *Hardwicke* held this to be an assignment in equity, *pro tanto*, so far as the debt to the creditor was concerned, and that though the husband might have disposed of the whole interest, yet as he did not, the residue of interest in the mortgages belonged to the wife

surviving her husband. So, again, in *Jewson* v. *Moulson,* (2 *Atk.* 417.) the wife was entitled, before marriage, as a legatee of her father; and the husband assigned all the interest which he was entitled to, in her right to her father's personal estate, to a creditor. But the Chancellor allowed the creditor's claim only on condition of his agreeing to make a separate provision for her and her children.

The doctrine of these cases is, that the husband may assign his wife's *choses in action,* for a valuable consideration, to a creditor; but even then the assignment is subject to her equity for a reasonable provision. (*Vide* the cases of *Pryor* v. *Hill,* 4 *Bro.* 139. *Like* v. *Beresford,* 3 *Vesey,* 506. *S. P.*) Those cases, also, show, that there is no distinction between the case of an interest vesting in the wife before or after coverture; and the inference from them is, (and the position is expressly conceded in other cases, and is well established. *Burnet* v. *Kinnerton,* 2 *Vern.* 40; Lord *Thurlow,* in *Saddington* v. *Kinsman,* 1 *Bro.* 51. note to *P. Wms.* 381.) that a voluntary assignment by the husband of the wife's personal property in action, without consideration, will not bind her, if she survives him. This admission of the right of assignment, for a valuable consideration, so as to pass the right of property free from the wife's contingent right of survivorship, (though not from the wife's equity for a reasonable provision for her support,) and the denying of this effect to a voluntary assignment, were also expressly declared by the Master of the Rolls, in *Mitford* v. *Mitford.* (9 *Vesey,* 87.) He there held, that an assignment in bankruptcy had no greater effect than a voluntary assignment, and he applied the rule to the case of a legacy given to the wife during coverture.

It is to be observed, that we are examining the cases in respect to the question of the wife's right of survivorship, and how far the property has been altered so as to prevent it. We have nothing to do, at present, with the point

which so often appears in the Chancery cases, how far the husband's assignment of the wife's property may affect what is termed the *wife's equity* to a reasonable provision out of the property, for the support of herself and her children. The two questions are not connected, and present very different rules for consideration.

In *Garforth* v. *Bradley*, (2 *Vesey*, 675.) Lord *Hardwicke* discussed more fully the control which the husband had over the wife's personal property lying in action. The wife had a legacy left her during coverture, and part of another legacy came to her by intestacy. The husband assigned over the whole interest, with a proviso, that at his request the assignee should reassign. He died, and the wife survived him, and the question arose between the respective representatives of the husband and of the wife, whether the surplus of her estate arising from the bequest, and the intestacy, survived. There was a settlement in that case, but the Chancellor decided the question arising on the survivorship of the legacy and distributive share, *independent of the settlement*, and upon the general doctrine applicable to the case. He observed, that whenever a *chose in action* came to the wife, whether vesting before or after marriage, it would survive to the wife, if she survived her husband, with this distinction, however, that as to those things which came during coverture, the husband might bring an action in his own name, and might disagree to the interest of his wife; and a recovery in his name was equivalent to reducing it to possession, and it would go to his representatives; and for which point he cited the case of *Hilliard* v. *Hambridge*, (*Alleyn*, 36.) He said further, that the husband might have released the money, or have assigned it for a valuable consideration to a creditor or purchaser. But in that case, as the assignment was not absolute, but with a proviso which created a trust for the benefit of the husband, there was no alteration of the property, as the husband was previously the owner, subject to

1821.

SCHUYLER
v.
HOYLE.

the wife's survivorship. The portion, therefore, of her estate not got in, was held to have survived to the wife.

With respect to a decree, judgment, order, or award, in favour of the husband, as to money to which he was entitled in right of his wife, it seems to be a settled rule, that if he sues alone and recovers, the property vests in him by the recovery, and is so changed as to take away the right of survivorship in the wife, but if the suit was in their joint names, the wife, as survivor, would take the benefit of the recovery. (*Oglander* v. *Baston*, 1 *Vern.* 396. *Nanny* v. *Martin*, 1 *Ch. Cas.* 27. *Heygate* v. *Annesley*, 3 *Bro.* 362. 1 *Fonb.* 305, 306, 308.)

*If a husband sues alone for his wife's property, and recovers, the property vests in him, so as to take away the wife's right of survivorship; but if the suit be in their joint names, the wife's right of survivorship remains.*

It appears, then, by the cases which we have hitherto noticed, that if the husband appoints an attorney to receive the money, and he receives it, or if he mortgages the property, or assigns it without reservation, and for a valuable consideration, or if he recovers it by a suit in his own name, or if he releases the debt, in all these cases, the right of survivorship in the wife ceases. But with respect to suits in this Court by the husband, for the wife's legacy or distributive share, I apprehend the rule to be that the wife must be made a party. This was considered to be the rule by the Master of the Rolls, in *Langham* v. *Nanny*, (3 *Vesey*, 467.) who observed, that as the husband could not reach his wife's property vested in trustees, who had the legal interest, without application to Chancery, he could not sue without joining her with him; and then the Court would make him provide for her, unless she consented to waive any provision. And again, in *Blount* v. *Bestland*, (5 *Vesey*, 515.) Lord *Loughborough* declared the same thing, and that the husband could not file a bill for the wife's legacy, without making her a party. And in *Carr* v. *Taylor*, (10 *Vesey*, 578.) the wife claimed a distributive share as next of kin to an intestate, who died while she was a *feme covert*; and the Master of the Rolls observed, that " whatever controversy there might have

*If the husband sues in this Court, for his wife's legacy, or distributive share, she must be made a party: and then the Court will make him provide for her.*

been upon the husband's right to sue in his own name for the *legal choses in action* of his wife, he could not sue for *this fund,* without joining her ; and if he had obtained a decree for it in her right, and died before he had reduced it to possession, it would have survived."

The case of *Blount* v. *Bestland* may also be referred to, in order to show that any indulgence given by the husband to the executor holding a legacy for the wife, and even receiving the interest of it, and suffering the principal to remain in the executor's hands, after the executor had showed a readiness to pay it, does not alter the nature of the property, or reduce it to the possession of the husband, so as to take away the right of survivorship to the wife. In *Wildman* v. *Wildman,* (9 *Vesey,* 174.) we have an equally strong instance of protection given to the contingent right of survivorship. The wife, while under coverture, became entitled to a distributive share of personal estate, as next of kin, and which consisted partly in public stock. The administrator transferred her share into her name, and she and her husband had transferred some part of it, and the residue stood in her name at his death. The Master of the Rolls, without giving any opinion whether the husband had a right to have transferred the stock into his own or another name, held that as the husband had not exerted any power to reduce it into possession, the property did not vest in him, so as to prevent the wife from taking it as survivor. A still more striking instance of the scrupulous care over the wife's right, appears in *Baker* v. *Hall.* (12 *Vesey,* 497.) The husband, as executor, took possession of the real and personal estate of the testator, and his wife was a residuary devisee. But as the husband took possession, *in the character of trustee* and executor of the will, and not as husband, the Master of the Rolls held, that the wife's share of the residue of the personal estate could not be deemed sufficiently reduced into possession, so as to prevent its surviving to her upon

his decease. And it has also been since ruled, (*Wall* v. *Tomlinson*, 16 *Vesey*. 413.) that a transfer of the wife's stock to the husband, *merely as a trustee*, was not a reduction into possession, so as to bar her right of survivorship, for it was made *diverso intuitu.*

Under the doctrine settled in these cases, there is no pretence for the suggestion, that the distributive share of Mrs. *Schuyler*, which remained in the hands of *N. J. V.* the administrator of the intestate, at the time of the death of *S.*, was reduced into the possession of *S.*, so as to entitle his representatives to that share in preference to his widow. While the share remained in the possession of the administrator, it retained the character of assets, and the legal title and possession were in him, *qua* administrator. The distributive share continued in the possession of the administrator as much as the legacy continued in the possession of the executor, in *Blount* v. *Bestland.* *Schuyler* had not attempted to exercise any authority or dominion over that property, by mortgaging it, or assigning it. The letter of attorney authorizing *N. J. V.* to take out letters of administration, and to distribute the shares coming to the heirs, was a power executed by the husband and wife *jointly*, and the direction to pay over was a direction to pay to them *jointly* the share of the wife. If the administrator was to have been compelled by suit to distribute, it must have been by a suit in equity in their joint names;' and from what was said in *Campbell* v. *French*, (3 *Vesey*, 321.) it may be questioned whether the Court would not have required, under the circumstances of this case, the consent of the wife, before it required the administrator to pay to the husband alone. There is nothing in this case to show that the husband ever *intended*, by any act of his, to appropriate this share to himself, so as to cut off his wife's contingent right of survivorship. We should act in contradiction to the whole course of the decisions, as well as to the truth of the fact, if we were to consider

the share of the wife, before it passed out of the hands of the administrator, as being reduced to the husband's possession. The husband died before he or his attorney received the share now in question, and before he had exercised any authority or dominion over it.

I am, accordingly, of opinion, that the defendant, *Sally H.*, upon the death of her husband *S.*, became entitled, in her own right, to that portion of her distributive share which had not been actually paid over to *S.* or to *Bleecker* his attorney, in his life time; and I shall so declare the rule.

*Decree accordingly.*