## MARY E. KNAPP *vs.* WILLIAM WINDSOR & wife.

The next of kin of a deceased intestate, being her paternal grandmother, and he maternal grandfather and grandmother, are each entitled to a distributive share of the intestate's personal estate.

THIS was an appeal from a decree of distribution, made by the probate court, of the personal estate of Frances E. Knapp, late of Dudley, in this county, deceased, intestate, and was submitted to the court on the following agreed statement of facts: —

The said Frances E. Knapp died intestate, and Solomon Severy was appointed her administrator at a court of probate held at Worcester, October 2d, 1849. The administrator presented his account, which was allowed by the judge of probate, whereby it appeared, that a balance of $11,004 remained to be distributed amongst the next of kin of the intestate. It appeared, that the intestate left Mary E. Knapp, the appellant, who was the mother of the intestate's father, and the appellees, William Windsor and Eunice Windsor, his wife, who were the father and mother of the intestate's mother, and no other next of kin. The judge of probate ordered the balance of the estate to be divided into three equal parts, and to be distributed to and amongst the said Mary E. Knapp and the said William Windsor and Eunice Windsor. From this decree of distribution Mary E. Knapp appealed, on the ground, that the judge ought by law to have decreed, that one half of the balance should be paid to the appellant, whereas the decree was, that only one third thereof should be paid to her.

*C. Allen*, for the appellant, argued that the history of the law, especially of the civil law, favored the appellant; that the omission, in the clause as to the next of kin, of the words "in equal shares," 'or " shall share equally," which are found in the other clauses of the same statute, (Rev. Sts. *c.* 61, § 1, *cl.* 1, 3, 6, 7,) indicated an intention on the part of the legislature not to depart from the general rule of law on this point; and that husband and wife could not take as joint tenants, citing Bac. Ab., Joint Tenants, B; Co. Lit. 187 *a*; 4 Kent, 363; *Shaw* v. *Hearsey*, 5 Mass. 521; 2 Cruise, 373.

*P. C. Bacon*, for the appellees.

SHAW, C. J. This case certainly presents a remarkable co-incidence of facts, not likely often to occur. It is that of a female dying intestate, with considerable personal property in her own right, having three grandparents living, but leaving no child, parent, brother, or sister. The appellant is her paternal grandmother, the mother of her father; the appellees are the father and mother of her deceased mother, and are of course husband and wife. These grandparents are now to take her estate, as next of kin, by force of the statute of distributions. Rev. Sts. *c.* 64, § 1, *cl.* 3, referring to and adopting *c.* 61, § 1, *cl.* 5. The words are, "shall descend to his next of kin in equal degree." It is a plain rule of law, that those who take property, as a class of persons described, where there is nothing in the law making the appropriation to distinguish their respective rights, take in equal shares. Under this rule, there being three heirs, next of kin in equal degree, the estate apparently must be divided into three shares, and the appellant be entitled to one of them, or one third. There would seem to be no doubt of the applicability of this rule to the present case, were not two of the distributees husband and wife. It is upon this fact, that the appellant raises the present question and claims one half, on the ground, that husband and wife are but one person in law, and, therefore, that they together and jointly are entitled to but one share, or moiety, and that she is entitled to the other.

This maxim is one of those fictions of law, intended to subserve a useful purpose, but not to be applied absolutely and

without qualification. To many purposes, husband and wife are one person in law, but they are several for the purpose of being the donees, grantees, or recipients of property. If property comes by law or is granted to a man, he is not the less competent to take and hold it because he has a wife: so if it comes to a woman, it is not the less available to her because she is a wife. The law, for the accomplishment of its own purposes, in regulating the rights and duties of husband and wife, may direct how it shall be taken, held, and disposed of, at and after marriage and during coverture, but that does not affect the act by which it is acquired. If it is real estate, the law directs that the husband shall be seized of it, in right of his wife, and be entitled to the possession and rents during coverture; if it is goods and chattels, the property in them vests absolutely and forthwith in the husband; but if it is a *chose in action*, he is entitled to it as his own, on reducing it to possession, as he may do. A right to a distributive share of an intestate estate, coming to a wife, is a *chose in action*, which the husband may reduce to possession, and take to his own use, at any time during coverture, and if he does not, it survives to the wife if she survives him. *Wildman* v. *Wildman*, 9 Ves. 174; *Carr* v. *Taylor*, 10 Ves. 574; *Schuyler* v. *Hoyle*, 5 Johns. Ch. 196; *Hayward* v. *Hayward*, 20 Pick. 517. These shares, coming to each of the grandparents, *suo jure*, though claimed by a common title, are distinct rights. The words of the statute (Rev. Sts. *c.* 64, § 1,) are, " shall be applied and distributed." Though like in amount, they are not the same shares. The law makes them several and distinct, and this is implied in the term " distributed."

But if the rule is a sound one, that because husband and wife are but one person in law, they can take but one share, it would apply to descendants as well as ancestors. But descendants may take in unequal proportions; as where several grandchildren, say four, take in their own right, and five children of a fifth grandchild, by right of representation. Suppose then a grandson, taking a fifth, had previously intermarried with a great-granddaughter, taking a fifth of a fifth, or one twenty-fifth. If they take as one person, is it the husband's

fifth, or the wife's twenty-fifth ? This shows not only that the shares are several in their nature, but may be different in amount, and that the distributees do not take jointly. The shares have a common origin, but there is no entirety or unity in their creation. The unity of title, as well as of interest, necessary to joint tenancy, is wanting.

But the appellant relies on the analogy between a distributive share coming to husband and wife by operation of law, and a gift or grant by deed or devise to husband and wife. It is laid down in the books, that baron and feme being one person in law, there can be no moieties between them of an estate given to them jointly during coverture. Co. Lit. 187 a; Bac. Ab., Joint Tenants, B. But if an estate is made to a man and a woman and their heirs, before marriage, and after they marry, the husband and wife have moieties. Co. Litt. 187 b. The distinction, we think, is, that in the first case, the grant is made to husband and wife, as such, by one and the same act, of one and the same entire estate; and by the rule of the common law, this creates a joint tenancy with a right of survivorship. So, it is laid down, that if a grant is made to A. and his wife, and to B., or to B. and C., and their heirs, respectively, they are all joint tenants, as between themselves; but the husband and wife are tenants by entireties as to each other; and as, for all the purposes of ownership, the husband and wife are but one person in law, they take only a moiety, in the one case, and only a third in the other. 2 Kent, Com. 132.

This we think arises from the consideration, that in a conveyance which derives its character and quality from the act of the party making it, as a grant or devise, which takes effect from the intent of the grantor or devisor, the law presumes in an express gift to husband and wife, as such, and in terms, or so designated, that it is the intent of the party to regard them as one person in law, and therefore that they shall take jointly with the other grantees or devisees named, and so only one share. And chancellor Kent, (2 Com. 132,) in a note, cites the authority of Mr. Preston, (2 Abstr. of Title, 41,) for the position, that as the law is now understood, husband and wife may, by express words, be made tenants in common by a gift to them during coverture.

The rule itself is originally laid down in Litt. § 291, and the ground or reason assigned by Coke is, that husband and wife take one and the same title, in one and the same right, and so it is joint; but that if they take different titles it is otherwise; as if a man·make a lease to A. and to a baron and feme named, to A. for life, to the husband in tail, and to the wife for years; in this case, each hath a third part, in respect to the severalty of their estates. Co. Litt. 189 *b.* The same thing is more fully expounded, in treating of the distinction between joint tenants and tenants in common, where lord Coke says, the essential difference is, that joint tenants have the lands by one joint title, in one right, and tenants in common by several titles, or by one title and by several rights. Co. Litt. 189 *a.*

In the present case, although in a certain sense the husband and wife claim under one title, that is, each as an heir of one and the same intestate, yet it is by several and distinct rights, not depending at all upon their relation of husband and wife. It appears to us, that the analogy between the acquisition of property by operation of law, giving to each individual of a class a share *suo jure*, and a grant giving a certain amount of property to several persons named, two of whom are husband and wife, and named and designated as such, is very slight. The former has its operation from the provisions of law, which are general and unlimited, and look simply at the relation of each to the intestate, and intend to give to each because so related; the other takes its effect from the presumed intent of the grantor or devisor, who has the power to make such gift as he pleases.

This distinction between property which comes by gift, grant, or devise, and that which comes by operation of law, is clearly stated by Blackstone, to this effect : " The creation of an estate in joint tenancy depends on the wording of the deed or devise, by which the tenants claim title ; for this estate can only arise by purchase or grant, that is, by the act of the parties, and never by the mere act of law." 2 Bl. Com. 180. The same result follows from the statement, by the same learned jurist, of the properties of a joint estate derived from

its unity, which is fourfold: 1st. unity of interest; 2d. of title; 3d. of time; 4th. of possession. *Ib.* To apply this to the present case. The share which the law gives to the husband is not the same share which the law gives to the wife. Each is a *chose in action.* The husband is not the less entitled to take his several share, because he is a married man. In case of his decease before distribution, it will go to his executors, because the right to distribution vests in him, at the decease of the intestate, but not the possession, till distribution. So, we think, under the authorities cited, as to the wife's share; should the husband die, leaving his wife surviving him, before distribution, the right to the distributive share as a *chose in action* will survive to the wife. If distribution is made during the lifetime of the husband, and he receives the share, it is thus reduced to possession, and becomes his absolutely.

The shares come by operation of law, and not by gift or bequest; there is no unity of title, nor of the right in which they come; it is only in a certain contingency, that both come to the use and possession of the husband, that of distribution being made during the coverture; and of course it is uncertain, whether both will come into the possession of the beneficiary at the same time.

On the whole, the court are of opinion, that the decision of the probate court was right, distributing the estate equally to the three grandparents, giving them one third each.

Some allusion was made in the argument to a rule of the civil law, by which, it was intimated, that in the case supposed, one half of this succession would go to the two grandparents on the mother's side, and the other half to the one grandparent on the father's side.

This no doubt refers to a rule stated in the notes to Cooper's Justinian, p. 543, in a commentary by the translator on the provisions of the 118th Novel. The same rule is stated in 2 Domat's Civil Law, (Am. ed.) § 2854. The rule is, that when there are several ascendants, in the same degree, some on the father's and some on the mother's side, the succession is to be divided into two moieties, and distributed one to the ascendants on the father's side, and one to those on the

14 *

mother's, though the number may be less on the one side than on the other.

This rule would in terms be favorable to the appellant; but it rests on a principle entirely different from that on which the case was put in the argument, and entirely different from that which prevails in our law in the regulation of descent and distribution. In the case supposed, the husband and wife would take one share only, not because they were husband and wife, and one person in law, for the result would be the same, if they were not husband and wife; but it depended solely on a positive enactment of the Roman law, founded in a supposed equity of which there is no trace in our law. On the contrary, the statute (Rev. Sts. *c.* 61, § 1, *cl.* 5,) in terms provides, that the estate shall go to the next of kin in equal degree, making no distinction between ascendants and descendants, and none between kindred on the father's and on the mother's side. There is indeed one exception to this general rule, founded on positive enactment, which is, that where there are two or more collateral kindred, in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor shall be preferred to those claiming through an ancestor more remote; for instance, the nephew shall be preferred to the uncle. Rev. Sts. *c.* 61, § 1, *cl.* 5. This provision shows, that with this express exception, all take *per capita*, who stand in equal degree. But the rule of the civil law, above referred to, is said to be founded on a kind of representation, and therefore may be thought to be analogous to the right of representation as understood in our law. But even in our law, where the right of representation does prevail, as among descendants, if they are all in the same degree of kindred, as all grandchildren or all great-grandchildren, they take in equal shares, though they would be very unequal if they took *per stirpem* and by right of representation. The rule of representation applies only from necessity, or where there are lineal heirs in different degrees, as children, and the children of a deceased child, or brothers and sisters, and the children of a deceased brother or sister. It is quite manifest, therefore, that this kind of representation among ascendants, so that one half shall go to the

paternal ancestors, and one half to the maternal, without regard to numbers, on each side, has no existence and no analogy in our law, and therefore that the rule of the civil law, founded upon positive enactment, and not on any great principle of general equity, can throw little light on the subject, or have any weight in deciding the present question.