## Case No. 2,613.

### CHAPPELLE v. OLNEY.

[1 Sawy. 401;[1] 4 Am. Law T. Rep. U. S. Cts. 30.]

Circuit Court, D. Oregon.  Dec. 31, 1870.

LIMITATION DURING TIME OF INSURRECTION — AUTHORITY OF PRESIDENT TO DECLARE THAT INSURRECTION HAD CEASED—EXCEPTIONS TO STATE OF INSURRECTION IN ARKANSAS — RIGHT OF ACTION NOT TO SURVIVE TO WIFE—INTEREST DURING STATE OF INSURRECTION.

1. From and after the act of July 13, 1861 (12 Stat. 257), and the proclamation of August 16, 1861 (12 Stat. 1262), pursuant thereto, declaring the inhabitants of Arkansas to be in a state of insurrection against the United States, and until the termination of such insurrection, an inhabitant of Arkansas could not maintain an action in the courts within the state of Oregon against an inhabitant of the latter state, and therefore the period during which such insurrection existed is not to be counted as a part of the time limited for the commencement of such an action.

[See note at end of case.]

2. The act of July 13, 1861, impliedly authorized the president, so long as congress did not otherwise provide, to declare by proclamation that the insurrection before declared to exist by him, had ceased, as to the inhabitants of any state or section thereof.

3. The president having declared the inhabitants of Arkansas in a state of insurrection, the court does not judicially know that any portion of them, then or afterwards, were within the exceptions in the proclamation because they in fact maintained a loyal adhesion to the Union, or inhabited a portion of the state occupied and controlled by the forces of the United States.

4. A chose in action accruing to a woman during coverture survives to her, unless the husband reduce it to his exclusive possession during his life time; therefore, when a legacy was given to the wife, and she and her husband joined in a power of attorney authorizing O. to collect and receive the same for her use and benefit, the receipt of the money by O. during the life of the husband was not the possession of the latter, except for the use of the wife, and the right to recover the same from O. survived to her.

5. Interest is not recoverable upon a debt owing by an inhabitant of Oregon to an inhabitant of Arkansas during the period the inhabitants of the latter state were in a state of insurrection against the United States.

[At law. Action by Martha Chappelle against Cyrus Olney to recover moneys received by defendant to plaintiff's use.]

E. C. Bronaugh, for plaintiff.
W. Lair Hill, for defendant.

DEADY, District Judge.  This action was commenced August 17, 1870.  From the complaint it appears that the plaintiff is a resident and citizen of the state of Arkansas and the defendant of Oregon, and that the plaintiff has resided in Cross county, in the state of Arkansas, continuously since December 10, 1859.  That in the year 1854, the plaintiff, then being one of the legatees

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

in the last will and testament of Philip Thompson, deceased, late of Oregon, did, together with her late husband, Elisha W. Chappelle, constitute and appoint the defendant their agent and attorney to collect and receive for plaintiff's use and benefit, all sums of money accruing to plaintiff from the estate of said Thompson, and to hold the same subject to the order and demand of plaintiff and her said husband; in consideration whereof, the defendant undertook and promised plaintiff and her said husband to transmit to said husband for the use and benefit of plaintiff all such sums of money received by him as aforesaid, whenever he should be thereunto afterwards requested. That the defendant as agent and attorney as aforesaid received from said estate for plaintiff's use the sum total of $6,146 in gold and silver coin; and that on November 30, 1860, the sum of $4,950.54 of said moneys was remaining in the hands of defendant; and that upon said last mentioned date, said Elisha W. Chappelle requested defendant to forthwith transmit to him for plaintiff's use and benefit all such moneys then in his hands; and that the defendant neglected and refused to transmit or pay over the sum of money then in his hands or any part thereof, and still so neglects and refuses, to the damage of plaintiff $9,756.71.

On August 17, the defendant appeared and demurred to the complaint, and for cause of demurrer alleged: 1. That the action had not been commenced within the time limited by law. 2. That the facts stated are not sufficient to constitute a cause of action.  On September 5 and 13 the demurrer was argued by counsel and submitted.

It appears from the complaint that the plaintiff's right of action did not accrue within six years next before the commencement of this action, but that a period of 9 years, 8 months and 17 days elapsed between the demand for the money and the bringing of the action.  By the law of this state such an action as this is barred if not commenced within six years; but when the plaintiff is "an alien, subject or a citizen of a country at war with the United States," the time of the continuance of the war shall not be a part of the time limited for the commencement of the action."  Code Or. 141, 144.  It follows that the demurrer as to the first cause alleged is well taken, unless the plaintiff's right to sue the defendant was suspended at least 3 years, 8 months and 17 days by reason of the hostilities or war carried on between the United States and the states of the so-called "Southern Confederacy"—including Arkansas—between November 30, 1860, and the commencement of this action.  If the right to sue was so suspended for any length of time, that period is not to be counted as a part of the six years within which the action may have been commenced.

By section 5 of the act of July 13, 1861 (12

Stat. 257), congress authorized the president, under certain circumstances therein mentioned, to declare by proclamation that the inhabitants of any state or section thereof were in a state of insurrection against the United States; "and thereupon all commercial intercourse by and between the same and the citizens thereof, and the citizens of the rest of the United States shall cease and be unlawful so long as such condition of hostility shall continue; and all goods and chattels, wares and merchandise, coming from said state or section into the other parts of the United States, and all proceeding to such state or section, by land or water, shall, together with the vessel or vehicle conveying the same, or conveying persons to or from such state or section, be forfeited to the United States."

This act was passed with direct reference to the rebellion or insurrection then being organized and maintained in certain states—including Arkansas—against the authority and government of the United States. In pursuance of this act the president on August 16, 1861 (12 Stat. 1262), by proclamation, declared the inhabitants of certain states —including Arkansas—to be in a state of insurrection against the United States, excepting, among others, the inhabitants of such parts of such states as "may maintain a loyal adhesion to the constitution and the Union, or may be, from time to time, occupied and controlled by forces of the United States engaged in the dispersion of said insurgents."

On April 2, 1866, the president by proclamation declared "that the insurrection which heretofore existed in certain states—including Arkansas—is at an end;" and on August 20, 1866, another presidential proclamation was issued declaring that the insurrection was at an end in Texas—this state not having been included in the proclamation last mentioned—and that the "said insurrection is at an end, and that peace, order, tranquillity and civil authority now exist in and throughout the whole of the United States of America."

From and after the date of the proclamation of August 16, 1861, all commercial intercourse was prohibited between the inhabitants of Arkansas and the people of the United States, and the transportation and removal of property to or from Arkansas to other parts of the United States not declared to be in a state of insurrection, was punishable by forfeiture thereof. For the time being the plaintiff was a citizen or inhabitant of a country at war with the United States, and therefore could not maintain an action in the courts within this state against the defendant to secure this money. 1 Kent, Comm. 66. The plaintiff's remedy was suspended until the cessation of hostilities and the restoration of peace and lawful intercourse between the people of the two countries. Id. 68.

The next question to be considered is, when did this state of insurrection or hostilities cease? Without stopping to consider whether the president has any power to declare the beginning or ending of an insurrection, except in pursuance of legislative authority, and conceding that all power over questions of war and peace, domestic or foreign, is vested by the constitution in congress, except that vested in the treaty making power, I am of the opinion that the authority conferred upon the executive by the act of July 13, 1861, to declare Arkansas in a state of insurrection, impliedly authorized him, if the state of things amounting to such insurrection should cease or change, to then declare it at an end, unless in the mean time congress had otherwise provided. Assuming that the insurrection, as to Arkansas, was at an end from and after the proclamation of April 2, 1866, the remedy of the plaintiff—the right to sue defendant for this money—was suspended for 4 years, 7 months and 16 days. Deducting this period from the time between the accruing of the right of action and the commencement of this action, leaves 5 years, 1 month and 1 day—a period of 10 months and 29 days less than that allowed by law within which to begin the action. This view of the matter is the most favorable one that can be taken for the defendant, for there is no ground upon which the court can assume that the insurrection, including the prohibition of intercourse between the people of the United States and Arkansas, terminated at an earlier date. Actual war—the marching of hostile forces and the conflict of opposing armies in battle—may have ceased sooner, but this proclamation is the earliest act of the government to which the attention of the court has been called which purports or has the effect to relieve the inhabitants of Arkansas from the status of insurrection and consequent non-intercourse, in which they were placed by the proclamation of August 16, 1861.

In U. S. v. Anderson, 9 Wall. [76 U. S.] 56, the question arose, when was the rebellion entirely suppressed? The circumstances were these: What is called the captured and abandoned property act, passed March 12, 1863 (12 Stat. 820), gave to the loyal owners of such property a right to bring suit against the United States in the court of claims to recover the proceeds thereof, "at any time within two years after the suppression of the rebellion." Anderson, a resident of Charleston, South Carolina, on June 5, 1868, commenced an action to recover the proceeds of certain cotton seized and sold by the United States. The defense was, that the action was barred by the limitation in the act of March 12, 1863, or in other words, that the action was not commenced "within two years after the suppression of the rebellion." By an act of congress passed March 2, 1867 (13 Stat. 422), it was declared

that the act passed June 20, 1864 (13 Stat. 144), to increase the pay of the army should "be continued in full force and effect for three years after the close of the rebellion as announced by the president of the United States, by proclamation bearing date August 20, 1866."

The court held that the limitation of two years did not commence to run until the rebellion was suppressed throughout the whole country, and that the proclamation of August 20, 1866, was the first official declaration on the part of the executive that the rebellion was wholly suppressed. The court also held that the act of March 2, 1867, was so far a legislative recognition of the proclamation declaring the insurrection at an end throughout the United States on August 20, 1866, and that that day would be considered as the day when the rebellion was suppressed, as respects the rights intended to be secured by the captured and abandoned property act.

The court also expressed the opinion that there is no reason why this declaration of congress should not be received as settling the question of when the rebellion was suppressed, "wherever private rights are affected by it." But the court premised this dictum by the declaration that it did not intend to decide anything more than the question: When was the rebellion entirely suppressed within the meaning of the limitation clause on the captured and abandoned property act?

The conclusion of the supreme court upon this question does not conflict with the opinion already expressed in this case, that for the purpose of enabling an inhabitant of Arkansas to maintain an action in the courts of Oregon, the insurrection and consequent disability of the plaintiff to sue were at an end, from and after the proclamation to that effect of April 2, 1866. For this purpose it was only necessary that the insurrection should have been declared at an end as to the inhabitants of Arkansas, and whether it still continued in Texas or not, did not affect the plaintiff's right to sue the defendant.

But as to this case, it makes no difference whether the insurrection as to the inhabitants of Arkansas, was at an end from and after the proclamation of April 2, 1866, or that of August 20, of the same year. In either case, after deducting the time during which the remedy of the plaintiff was suspended by the state of war or insurrection, the limitation of six years would not have run against her right of action.

On the argument counsel for defendant did not seriously question the correctness of these conclusions, but maintained that the action was barred unless it affirmatively appeared from the complaint that the plaintiff was not within the exception contained in the proclamation of August 16, 1861, or in other words, that the particular locality in Arkansas—Cross county—in which the plaintiff resided during the existence of the insurrection did not "maintain a loyal adhesion to the Union and the constitution," or was not "occupied and controlled by forces of the United States."

The plaintiff is not required to anticipate the defense of the statute of limitations, nor could the defendant at common law claim the benefit of it unless he pleaded it. But under the Code, when it appears from the statement of the cause of action in the complaint, that it did not accrue within the limitation prescribed by law, the defense may be made by demurrer. In such case I suppose the plaintiff should anticipate the defense by stating in the complaint any special matter which he relies upon to take the case out of the statute, or otherwise the demurrer will be sustained. But, as in this case, if such special matter is within the judicial knowledge of the court, it need not be stated in the complaint.

Here it appears upon the face of the complaint that the action was not commenced within six years from the time it accrued. If this were all, a demurrer that the action had not been commenced within the time limited would be a good defense. But it is also judicially known to the court that the inhabitants of Arkansas—which description includes the plaintiff under the allegations in the pleadings—were in a state of insurrection against the United States for a sufficient period after the action accrued to take the case out of the statute. But at this point the defendant asks the court to assume that Cross county was during this time within the exception in the proclamation,—that is, was either loyal to the Union or occupied by the forces of the United States, and therefore not in a state of insurrection. Now this is a matter of which, if true, the court cannot take judicial notice. The proclamation declares the whole state to be in a state of insurrection. No particular exceptions to this condition are recognized as then existing. The exceptions made, relate to no particular person or place, but only to such persons or places as may possibly then or thereafter—particularly thereafter—"maintain a loyal adhesion to the Union and constitution," or be "occupied and controlled by the forces of the United States." The exception in regard to the state of Virginia is positive and definite. It relates to the "inhabitants of that part of the state lying west of the Alleghany mountains." If then the particular portion of Arkansas in which the plaintiff resided during the hostilities between the United States and the Southern Confederacy was, as a matter of fact, loyal to the Union or occupied and controlled by United States forces, and therefore not in a state of insurrection, and the defendant relies upon these facts to bring the case within the bar of the statute, he should plead them and be prepared to prove them on the trial.

Upon the argument of the second cause of demurrer it was contended for the defendant that the chose in action—the legacy—was reduced to possession by the husband of plaintiff in his lifetime, and therefore the right to the same did not survive to her, but to the administrator of the husband. Upon a careful examination of the facts and authorities I am clear that the demurrer in this respect is not well taken. The husband was entitled to reduce this legacy to his possession in his lifetime, and then the property in it would have become absolutely his, and upon his decease gone to his administrator. But if he did not so reduce it to possession, his property in it being in the meantime only conditional, it would survive to his wife. 1 Bac. Abr. 700; Hayward v. Hayward, 20 Pick. 520; Schuyler v. Hoyle, 5 Johns. Ch. 196. In Hayward v. Hayward, and Schuyler v. Hoyle, supra, the questions raised by this branch of the demurrer are thoroughly examined and discussed, and the decisions of both the learned courts were in favor of the right of survivorship of the wife, and that, too, under circumstances not so strongly in her favor as are those of this case.

If the power of attorney given to defendant had been given by the husband alone, as it might have been, there would be force in the argument that the act itself evinced an intention to reduce the property to his own possession. But the power was from the wife as well as the husband. This fact itself shows a want of intention on the part of the husband to acquire the property for himself; and the possession of the defendant acquired under this joint power of attorney was not the separate possession of the husband, but of him and his wife.

It is well settled that if the husband sues alone, as he may, for money to which he is entitled in right of his wife, and recovers, the property thereby vests in him, and the right of ownership in the wife is cut off; but if the husband and wife sue jointly, and the husband dies, the wife as survivor would take the benefit of the recovery. 5 Johns. Ch. 210. The joining of the wife in the suit is held to be sufficient evidence of an intention on the part of the husband not to reduce the property to his own possession or recover it for the benefit of himself.

In this case, in addition to the wife's joining in the power of attorney, there is the express declaration therein, that the defendant was to receive and transmit this legacy to the husband for the use and benefit of the wife. This circumstance alone shows that it was not the intention of the husband to acquire possession of the property otherwise than for the plaintiff. Under these circumstances, the receipt of the money by the defendant was not the receipt of it by the husband otherwise than for the use and purpose mentioned in the power, and upon his death, whilst the money was still in the hands of the defendant, the right to sue for and recover it to her own use, survived to the wife.

This debt being payable directly to the plaintiff, interest is not recoverable upon it while she was an inhabitant of the district of country in a state of insurrection against the United States. Ward v. Smith, 7 Wall. [74 U. S.] 452.

[The demurrer must be overruled, with costs.] [2]

[NOTE. The statutes of limitations of the several states did not run, during the civil war, as to controversies between inhabitants of the Confederacy and inhabitants of the loyal states. Hanger v. Abbott, 6 Wall. (73 U. S.) 532; Levy v. Stewart, 11 Wall. (78 U. S.) 244; Stewart v. Kahn, Id. 493; U. S. v. Wiley, Id. 508; Brown v. Hiatts, 15 Wall. (82 U. S.) 177; Adger v. Alston, Id. 555.]

[2] [From 4 Am. Law T. Rep. U. S. Cts. 30.]