## SNYDER *vs.* SNYDER.

The second section of the act of April 7, 1848, " for the more effectual protection of the property of married women" was not intended to have a retrospective operation, so as to apply to property which females then married had at the time of their marriage, or which they had acquired during coverture.

The true construction of that section is, that, so far as there should be any property upon which the law could operate, the same provisions contained in the first section of the act, for the protection of the property of females who should marry after the passage of that act, should be applicable also to the property of females married before the passage of the act.

An allowance to a married woman for temporary support, as well as for the purpose of defraying the expenses of a suit brought by her against her husband for a separation, is left to the sound discretion of the court.   And in the exercise of that discretion such allowance will be withheld when it is apparent that there is no probability that the wife will ultimately succeed.   *Per* HARRIS, J.

IN EQUITY.   The bill in this cause was filed by the plaintiff for a separation from her husband, upon the ground of cruel and inhuman treatment.   The defendant put in his answer upon oath, in which he denied the principal allegations in the bill in respect to unkindness and improper treatment.   The plaintiff subsequently presented her petition, in which she stated that at the time of her marriage with the defendant she owned the undivided half of a house and lot in the city of New-York, which was afterwards sold for $6000, of which the defendant had received $4000, and that for the balance he still holds a bond and mortgage upon the property sold ; that she also owned bank stock worth $664, which has since been sold and the proceeds received by the defendant ; that she also owned a piano which has since been sold by the defendant for $100 ; that with the proceeds of the sale of her property the defendant purchased certain real estate in New Jersey, which he subsequently exchanged for a house and 26 acres of land in Carlisle, Schoharie county, and received upon the exchange $1000 in cash, which he loaned upon bond and mortgage ; and that he still owns the land in Schoharie county, and holds the bond

and mortgage for the $1000 loaned : that the defendant also purchased, with the money he received for the proceeds of the plaintiff's property, a store and lot in Carlisle, which he still owns ; that he also purchased another lot of land in Carlisle, containing 56 acres, for $1300, but that the same is mortgaged for the entire amount of the purchase money ; and that the defendant has no other real estate.   The petition further stated, that when the parties were married, the defendant had no property, and that since the marriage he had reduced the amount of property acquired by the marriage about $2800 ; and that the defendant was an habitual drunkard.   The plaintiff alleged that she was wholly destitute of the means of support during the pendency of the suit, and she prayed that the defendant might be directed to deliver up the bonds and mortgages, and the possession and control of the real estate, to her ; or that he might be required to pay a reasonable sum for the support and maintenance of the plaintiff during the pendency of the suit, and also such sum as might be necessary to enable her to carry on and defray the expenses of this suit.   The statements in the petition, in respect to the property acquired by the defendant by virtue of the marriage, and the property now owned and possessed by the defendant, were substantially admitted, but the defendant denied that he was an habitual drunkard, and he produced several affidavits tending to show that he was not.

*J. S. Frost*, for the plaintiff.

*Goodyear & Martin*, for the defendant.

HARRIS, J.   The first branch of the plaintiff's application is founded upon the second section of the act "for the more effectual protection of the property of married women," passed April 7, 1848.   (*Laws of* 1848, *p.* 307.)   The question involved is, whether that section is intended to operate retrospectively, or whether it was intended only to apply prospectively.   It is a general rule that " no statute is to have a retrospect beyond the time of its commencement."   (6 *Bac. Abr.* 370.)   " In these cases,"

Snyder *v.* Snyder.

said Justice Spencer, in *Dash* v. *Van Kleeck*, (7 *John.* 486,) referring to the rules by which courts are governed in the construction of statutes, "the inquiry is into the intention of the legislature, taking as a leading guide, in aid of the construction, the presumption that all laws are prospective, and not retrospective." And in the same case, Kent, chief justice, says: "The very essence of a new law is a rule for future cases." Taking this rule, which is so obviously the dictate of reason and justice that it has been adopted in all civilized states, ancient and modern, for our guide, no great difficulty will be found in giving such a construction to the section of the statute in question as shall be consistent with justice, and in no degree impair any vested rights.

The first section of the act relates to the property of females who shall marry after the act shall take effect. It declares that in such cases the property of the wife, real and personal, "shall not be subject to the disposal of her husband, nor shall be liable for his debts, and shall continue her sole and separate property, as if she were a single female." This section is made applicable only to property which the wife may own "at the time of her marriage." The second section contains substantially the same provision in respect to the property of females married at the time of the passage of the act. There is nothing in the language of this section which indicates that the legislature intended it should apply to the property which such females had at the time of their marriage, or had acquired during coverture. On the contrary, the husband, by virtue of the marriage, had acquired a legal title to such property, and in no proper sense could it be said to be the property of the wife. The true construction of this section therefore is, that, so far as there should be any property upon which the law could operate, the same provisions contained in the first section, for the protection of the property of females who should marry after the passage of that act, should be applicable also to the property of females married before the passage of the act. It has been said that if the second section is, like the first, to be merely prospective in its operation, such a construction would render

Snyder *v.* Snyder.

the last clause of the section unmeaning. But I do not so re-gard its effect. Suppose a female, married at the time of the passage of the act, should subsequently acquire property by inheritance. Such property would not be subject to the dispo-sal of the husband, but would, I apprehend, be liable for his debts contracted before the passage of the act, to the same ex-tent as if the act had not been passed. The exception seems to have been inserted in the section, *ex industria,* for the pro-tection of creditors. As though the legislature intended not only to guard the *rights* of creditors, but also, not to disappoint their hopes. By the third section it is provided that property which the wife may receive by " gift, grant, devise or bequest," shall not be liable, even for the debts of the husband.

Thus it will be seen that the act in question may be con-strued so as to give a reasonable effect to all its provisions with-out violating the general rule that a statute affecting rights and liabilities should not be so construed as to act upon those al ready existing, unless it appears from the terms of the statute itself that such was the intention of the legislature. (*Butler* v. *Palmer,* 1 *Hill,* 334 ; *citing Terrington* v. *Hargreaves,* 3 *Moore & Payne,* 143. *See also Williamson* v. *Field,* 2 *Sandf. Ch. Rep.* 570.) It follows from this view of the case that the claim of the plaintiff to the property in the possession of her husband, on the ground that she is entitled to it by virtue of the act of April 7, 1848, cannot be sustained.

Although the defendant was not required to answer upon oath, he has sworn to his answer. He has either denied or explained the allegations in the bill in such a manner as to render it quite improbable that the plaintiff will finally succeed in obtaining the decree she seeks. An allowance to the wife for the purpose of defraying the expenses of the suit, as well as for temporary support, is left to the sound discretion of the court. In the exercise of that discretion such allowance will be with-held when it is apparent that there is no probability that the wife will ultimately succeed. In this case it is possible that the plaintiff may be able to produce such proof as to entitle her to a decree. The defendant has in his possession about $4000

acquired from the plaintiff. She is destitute. The defendant has no one to provide for but himself. The only surviving child of the parties is married, and her husband, it would seem, is now supporting the plaintiff. Under these circumstances, it is not improper, I think, if the plaintiff chooses to continue the suit, to allow her the means of doing so. I shall therefore direct that the defendant, within thirty days after service of a copy of the order, pay to the solicitor for the plaintiff one hundred dollars to defray the expenses of carrying on this suit, and that he also pay to the plaintiff, or her solicitor, for her, as an allowance for alimony, during the pendency of the suit, twelve dollars per month, commencing from the time of filing the bill. The injunction issued against the defendant is also to be so modified as to allow the defendant to pay the expenses of defending this suit, not exceeding one hundred and fifty dollars, out of the property in his hands.

---

RENSSELAER GENERAL TERM, June, 1848. *Paige, Watson,*
*and Parker,* Justices.