Edwards, J.
Before inquiring how far the interest of the husband in his wife’s legacy, which vested before the passage of the act for the more effectual protection of the property of married women, is affected by it, it will be necessary to determine what is the nature and extent of that interest. A legacy, or distributive share, accruing to the wife, is regarded as a chose in action, and, as far as the rights of the husband are concerned, it stands upon the same footing as a promissory note, or other property of a similar character. (Garforth v. Bradley, 2 Ves., Sen., 675; Schuyler v. Hoyle, 5 Johns. Ch., 196; 2 Kent Com., 137.) The general rule of the common law is, that the husband has the right to reduce the choses in action of the wife into possession, but that, until he does so, they do not vest in Mm as his own property; and in case he dies in the lifetime of his wife, they survive to her. But this general description does not give an adequate idea of the extent of the husband’s interest, for, in addition to his right to reduce them into possession, he may assign them even by a voluntary assignment ; although, in that case, the wife’s right of survivorship will remain. (Burnet v. Kinnaster, 2 Vern., 410; Mitford v. Mitford, 9 Ves., 87; 2 Atk., 420.) They will also pass under a general assignment in bankruptcy, or under insolvent laws, subject, however, to the right of survivorship in the wife. (9 Ves., 87; 2 Atk., 420; Pierce v. Thornely, 2 Simons, 167; Van Epps v. Vandeusen, 4 Paige, 64.) But the husband may cut off that right by an assignment for a valuable consideration, although the wife’s right to an equitable provision for her support cannot be thus taken away. (Cataret v. Pascnal, 3 P. Wms., 197; Bates v. Dandy, 2 Atk., 206, S. C.; 3 Russel, 65, note; 2 Atk., 417, 9 Ves., 87; 5 Johns. Ch., 196; 6 ib., 178; 2 Kent's Com., 136.) In *206 the case of Haner v. Martin (3 Russ., 65), Ld. Lyndhurst says: That “ equity considers the assignment by the husband as amounting to an agreement that he will reduce 'the property into possession ; it likewise considers what a party agrees to do as actually done; and, therefore, where the husband has the power of reducing the property into possession, his assignment of the chose in action of the wife will be regarded as a reduction into possession.” This may seem to be rather an artificial reason, but the rule is con sidered as well settled by authority. As to choses in action which accrue to the wife before the marriage, the husband must sue jointly with the wife ; but it is said that he may or may not join her with him in a suit upon choses in action which accrue after the marriage. In Garforth v. Bradley (ubi sup.), Ld. Hardwick says: That by bringing the action in his own name, the husband may disagree to the interest of the wife, and that a recovery in his own name is equal to reducing into possession. (Richards v. Richards, 2 Barnewall & Ad., 447; Clancy, 4.) If the husband survives the wife, and she leaves choses in action which he has not reduced to possession, he is entitled to recover and enjoy them as his own, by acting as her administrator. He has this right, according to some, jure mariti, and irrespective .of any statute. (Watt v. Watt, 3 Ves., Jr., 244.) It has also been held that the authority was conferred by the 31 Edw. III, which directs that administration be granted to the nearest and most lawful friend. (Salk., 36.) By others, it has been thought that the husband derives his right from the 29 Car. II, ch. 3, §§ 2 and 5; similar statute, 1 R. L., 314; 2 R. S., 75; Squib v. Wager, 1 P. Wms., 378; Cart v. Rees, ib., 381; Whitaker v. Whitaker, 6 Johns., 112; 2 Kent Com., 135.) If theliusband, who has survived his wife, dies before he has recovered the choses in action, his representatives are entitled to them. (Butler's note, 304, to Co. Lit., lib. 3; Elliott v. Collins, 3 Atk., 526; 6 Johns., 118; Betts v. Kimpton, 2 B & Ad., 273.) And in this state there is an express *207 statutory provision, that “ if the husband shall die, leaving any of the assets of his wife unadministered, they shall pass to his executor or administrator as part of his personal estate, but shall be liable for her debts, to her creditors, in preference to the creditors of the husband.” And “if letters of administration, in the estate of a married woman, shall be granted to any other person than her husband, by reason of his neglect, refusal or incompetence to take the same, such administrator shall account for and pay over the assets remaining in his hands to such husband or his personal representatives.” (2 R. S., 75.) It is apparent, from these rules, that the interest of the husband in the choses in action of the wife which have not been reduced to possession, is of a peculiar and anomalous nature. But can it be said that he has not a vested right of a valuable character, which the law is bound to protect ? The counsel for the appellant referred us in his argument to the case of Clark v. McCreary (12 Smedes & Marsh, 347), which was decided under a statute of Mississippi, and presented a question similar to that which is raised here. In that case, the court placed then- opinion upon the ground that the. right of the husband to reduce his wife’s choses in action into possession was not a vested interest, that is, as they explain it, the property is not vested in possession ; and they quote a definition given by Chan. Kent, that “ an estate is vested when there is an immediate right of present' enjoyment, or a present fixed right of future enjoyment.” (4 Kent's Com., 202.) They further say that “ the husband’s interest in the wife’s choses in action is a qualified right, upon condition that he reduce them into possession during coverture. This condition is manifestly a condition precedent, and it is indespensable that the condition precedent .should take place before the estate can vest. In this case the law was passed before the condition was performed, and intercepted the right of the husband.” Now, it seems to me that the whole of this reasoning is founded upon a *208 fallacy. A right to reduce a chose in action to possession is one. thing, and a right to the property which is the result of the process by which the chose in action has been reduced to possession, is another and a different thing. But they are both equally vested rights. The one is a vested right to obtain the thing, with the certainty of obtaining it by resorting to the necessary proceedings, unless there be a legal defence, and the other is a vested right to the thing after it has been obtained. This distinction is entirely lost sight of in the opinion of the learned court in the case last cited. Upon the argument of this appeal, the counsel for the appellant defined the interest of the husband in his wife’s legacy to be an authority to collect it. I do not object to this definition, if we add the words for his own benefit. In the case of Gallego v. Gallego (2 Brock., 286), Ch. J. Marshall said : “ The husband has no interest in the legacy of his wife; he has only a power to make it his by reducing it 'to possession.” But the words authority and power, as here used, are synonymous with right. This right, it is true, -is personal, and no one can exercise it but the husband himself or his assigns, or, under certain circumstances, his representatives. It is not a right which can be taken in execution. (Price v. Sessions, 3 How., 624.) Ueither will a court of equity compel a husband to exercise it in favor of his creditors. (2 Brock., 286.) But it is none the less valuable to the husband on that account. It is a right of a peculiar and restricted character, but- it is fixed, certain and vested, and this case shows that it may be of great pecuniary value. The legacy given to the respondent’s wife amounts to $5000. 'At the time that these proceedings were commenced there is no doubt that the husband could have legally assigned his right to reduce the legacy into possession for a valuable consideration. He was then entitled to receive the legacy as his own, by taking the necessary legal proceedings, and he will now be entitled to receive it, unless the right which he then had *209 has been legally taken away, and if that right has been taken away, he has lost a vested right of the value of the legacy in question. What, then, has been the effect of the act of 1848 ?
The constitution of this state declares that “no person shall be deprived of life, liberty or property without due process of law.” (Const., art. 1, § 6.) Due process of law undoubtedly means, in the due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights. Such an act as the legislature may, in the uncontrolled exercise of its power, think fit to pass, is, in no sense, the process of law designated by the constitution. This construction has heretofore been adopted" (Taylor v. Porter, 4 Hill, 140); and it is so obviously sound, that the mere statement of it is sufficient. Its correctness cannot be made more apparent by argument or illustration.
I think that the right of the respondent to recover the legacy of his wife, which existed at the time that the statute in reference to married women went into operation, was property within the meaning of the constitution, and that he has not been deprived of it by the statute.
The judgment should be affirmed.
Denio, J.
When the act of 1848, for the more effectual protection of the property of married women, took effect, the rights of the respondent, William Gregg, respecting the legacy bequeathed to his wife by the will of her father, were as follows : He was entitled to prosecute for it, and when recovered to take the money to his own use; he had a right to assign it for a valuable consideration, and such assignment would vest it in the assignee, and would cut" off the wife’s right to it in the event of her surviving him, and he might also release and discharge' it. These' rights were, however, subject to the jurisdiction of the courts to compel him to make a suitable provision for her, under the head *210 of what is called the wife’s equity. In the event of her dying before him and before he had recovered the legacy, it would belong to him absolutely; and should he afterwards die, leaving the money uncollected, his executor or administrator would be "entitled to collect it as a portion of his assets, without taking out administration on her estate. But should he die, leaving her surviving, without having reduced the legacy to possession and without having assigned or released it, or recovered a judgment or decree in his sole name for the money, it would survive to her, and his representatives would have no interest in it. (2 Kent's Com., 135 and seq.; 1 Roper on Husband and Wife, 227; Schuyler v. Hoyle, 5 John. C. R., 196; 2 R. S., 75, § 29; Roosevelt v. Ellithorp, 10 Paige, 415, 420; Lockwood v. Stockholm, 11 id., 87, 91.)
The single question in this cause is, whether these lights of the husband to the legacy in question were taken away by the act of the legislature referred to. When that act was passed he was prosecuting, in the joint names of himself and his wife, to obtain a decree of the surrogate for the payment of the legacy; and but for the statute, it is entirely certain that he would have been entitled to a decree which would have enabled him to recover the money and appropriate it to his own use.
It seems to me to be impossible so to construe the second section of this statute as to limit its provisions to property to be acquired by a wife, then married, after its passage, as was done in Snyder v. Snyder (3 Barb., 621). The section relates to persons in a state of coverture when the act was passed. It speaks of the real and personal property of the wife, and declares that it shall be her sole and separate property. The language is sufficiently broad to embrace the property which she owned at the passage of the act. Still, were it not for the concluding words of the section, we might perhaps apply to the provision the doctrine of Dash v. Van Kleek (7 John., 477), and of the *211 class of cases which hold that general words in a statute should be construed prospectively, where a different interpretation would take away vested rights. But the act declares that the property of the wife shall be her sole and separate property, as if she were a single female, except so far as the same may be liable for the debts of her husband theretofore contracted. This last expression could not be predicated of property which might be acquired by or be given to the wife after the passage of this act, for all such property would be completely protected by the third section. Neither can the provision be limited to the strictly separate property of women then married, for as to such property there would be no need of such a statute; and besides, it would not, ordinarily, be liable for the debts of the husband. I am, therefore, .constrained to believe that the true meaning of the section is, that all property which the wife owned at the time of the marriage, and that all such as she had acquired by gift, devise or otherwise during the coverture but before the passing of the act, should thereafter be deemed to be vested in her as though she were a feme sole, to the exclusion of any title which, by the preexisting laws, the husband had acquired in it by virtue of the marriage relation, saving only the rights of creditors. We are to inquire, then, whether the legislature were competent to enact such a law.
I am of opinion that the act, in its application to this case, is a violation of the constitution of this state. Among the limitations of the powers of government contained in that instrument is the one which declares that “no person shall be deprived of life, liberty or property, without due process of law.” (Const., art. 1, § 6.) That the right which the respondent had to this legacy, the instant before the act of 1848 took effect, was property, in the justest sense of that term, I cannot doubt. An immediate right of action for the recovery of money, which, when recovered, is to belong to the party in whom the right of action *212 exists, subject to be defeated only .by the contingency that a person in being may die before judgment can be obtained, is a valuable pecuniary interest, which deserves protection equally with rights which' are absolute and unconditional. Besides, this was an interest which the respondent might .sell, and for which he might receive the consideration to his own use. This property the act, if valid, has effectually deprived him of. It declares it shall no longer belong to him, but shall be the property of his wife, as though she were a single female. The act does not fall within the meaning of due process of law. That term, according to Lord Coke, means being brought in to answer, according to the “ old law of the land.” (2 Inst, 50; and see, also, Taylor v. Porter, 4 Hill, 140, and cases cited by Bronson, J.; 2 Kent's Com., 13.)
The provision was designed to protect the citizen against all mere acts of power, whether flowing from the legislative or executive branches of the government. It does not. of course, touch the right of the state to appropriate private property to public use upon making due compensation, which is fully recognized in another part of the constitution ; but no power in the state can legally confer upon one person or class of persons the property of another person or class, without their consent, whatever motives of policy may exist in favor of such transfer.
I have intentionally forborne to rely upon the principle mentioned in some cases, of a supposed implied restriction upon legislative power, arising out of the nature of free institutions; firstly, because I suppose a judgment in favor of the respondent will stand firmly upon express constitutional provisions, but principally because, as at present advised, I am not prepared to’ assent to the doctrine that the courts can limit the authority of the legislature by exceptions which are not found in the constitution itself. (2 Kent's Com., 340, and cases cited in note (a); Taylor v. Porter sup. Wilkinson v. Leland, 2 Pet., 657.)
*213 The constitutional validity of the statute in question has been several times under consideration in the supreme ' court, where views in their result similar to those which I have expressed have generally prevailed. (Snyder v. Snyder, 3 Barb. S. C. R., 621; Holmes v. Holmes, 4 id., 295; White v. White, 5 id., 474; Hurd v. Cass, 9 id., 366.)
The judgment of the supreme court should be affirmed.
All the judges, except Ruggles, J., who took no part in the decision, concurred
Judgment accordingly.