STAR OF HOPE, The (ANNAN v.). See Case No. 405.

STAR OF THE EAST, The. See Case No. 9,223.

# Case No. 13,314.

## STARR v. HAMILTON et ux.

[1 Deady, 268.][1]

Circuit Court. D. Oregon. June 25. 1867.

HUSBAND AND WIFE—CURTESY—OREGON CONSTITUTION—WIFE'S SEPARATE ESTATE—MARRIAGE—GIFT FROM HUSBAND—DEBTS OF HUSBAND.

1. Prior to February 14. 1859. while Oregon was a territory. the common law being in force therein. the husband by reason of the marriage became seized of a freehold estate in all the lands in which his wife had an estate of inheritance during the coverture. which could be taken in execution by his creditors.

[Cited in Wythe v. Smith, Case No. 18,122; Elliott v. Teal, Id. 4,396; Manning v. Hayden. Id. 9,043; Stubblefield v. Menzies. 11 Fed. 271.]

[Cited in Lemon v. Waterman, 2 Wash. T. 485, 7 Pac. 900.]

2. The constitution of Oregon, which went into effect February 14, 1859. provides (article 15, § 5) that certain property of every married woman "shall not be subject to the debts or contracts of the husband:" Held, that this provision had the effect as to third persons at least, to make such property thereafter the wife's separate property.

3. The separate property of a married woman is that of which she has the exclusive control and benefit. and its character as such must be imparted to it by the instrument or power by which the wife acquires the property.

4. Property conveyed to a wife and her heirs by her then husband. by an ordinary deed which contains no terms, from which it appears that it was the intention of the grantor to exclude the husband, as such, from the benefit and control of it. is not, by operation of such deed. her separate property.

5. The constitutional provision aforesaid concerning certain property of married women was not intended to operate retroactively. so as to affect rights already vested in the husband; and by article 18, § 10, of the constitution is prevented from so doing, if it otherwise would.

6. Marriage is not a contract within the purview of the national constitution, but a civil institution or relation, to be regulated and controlled by law, so far as the rights of the parties thereto in the property of each other is concerned; and until these become vested interests the legislative power may regulate the subject from time to time. to suit the wants of society. or the interests of. the parties to the relation—therefore the provision aforesaid in relation to the property of married women applies to marriages existing when it went into force, so far as after acquired property is concerned.

7. Money loaned by the wife to her husband in 1857. which came to her by the sale of real property inherited before that time, was. by virtue of the marriage, the property of the husband. and therefore where property was afterwards purchased by the husband and the conveyance therefor taken to the wife for the ostensible purpose of reimbursing the latter, it is a gift from the husband. and not a purchase by the wife.

[Overruled in Dick v. Hamilton, Case No. 3,-890.]

8. A gift to the wife from the husband, he acting in good faith and being solvent at the time, is within the provision of the constitution of Oregon (article 15, § 5) concerning the property of married women, and is therefore not "subject to the debts and contracts of her husband."

This was an action [by Addison M. Starr against Alexander Hamilton and Christina E. Hamilton] for the recovery of the possession of real property in the city of Portland. and by the stipulation of the parties, was tried by the court without the intervention of a jury.

The facts of the case are stated in the findings of the court as follows:

I. That the defendants, Alexander Hamilton and Christina Hamilton, were intermarried in the year 1853. at Portland. Oregon, and that the relation of husband and wife has ever since subsisted between such defendants.

II. That on July 1, 1859, the defendant, A. Hamilton, together with certain other persons, made his promissory note to the plaintiff herein, for the sum of one thousand dollars with interest, at the rate of three per centum per month thereon; and that afterwards, on March 21, 1865, in the circuit court for the county of Clackamas, state of Oregon. the plaintiff herein, in a suit against the defendant, A. Hamilton, and the others aforesaid. upon said promissory note. duly recovered a judgment therein against the said defendant, A. Hamilton, for the sum of two thousand five hundred and ninety-nine dollars.

III. That on July 27, 1866, a writ of execution was duly issued out of the clerk's office of the court aforesaid, against the property of the defendant, A. Hamilton, and directed to the sheriff of Multnomah county, state of Oregon; and that in pursuance of the command of said writ, the sheriff aforesaid, did, on July 30. 1866, duly levy on the real property described in the complaint of the plaintiff herein; and that said sheriff did, on September 4, 1866, in pursuance of said levy, duly expose to sale at public auction, the real property aforesaid, at which sale the plaintiff herein became the purchaser thereof.

IV. That on March 26, 1867, the court aforesaid made an order confirming the sale aforesaid in all respects; and that afterwards on June 6, 1867, the sheriff aforesaid in pursuance of the aforesaid order and pro-

[1] [Reported by Hon. Matthew P. Deady. District Judge. and here reprinted by permission.]

ceedings. duly executed and delivered to the plaintiff herein, a deed, whereby he conveyed to said plaintiff all the right, title and interest, which the defendant, A. Hamilton, had in and to the real property aforesaid, on September 4, 1865, or at any time afterwards.

V. That prior to the marriage of the defendants as aforesaid, Christina Hamilton, inherited from her mother a piece or parcel of real property, situate in the state of Missouri; and that in July, 1857, she sold and conveyed the same to her brother for the sum of one thousand dollars, receiving from her said brother at the same time the additional sum of two hundred dollars, in payment for the prior use and occupation, by her said brother, of said real property.

VI. That on February 13, 1858, in consideration of the sum of five hundred dollars. paid by Christina Hamilton, Daniel H. Lownsdale did, by his deed duly executed and delivered, convey to said Christina Hamilton the real property, described in the complaint of the plaintiff herein as block two hundred and fifty, to have and to hold the same to her and the heirs of herself by the defendant, A. Hamilton forever; and that the said five hundred dollars paid to Daniel H. Lownsdale as the consideration for the conveyance of block two hundred and fifty as aforesaid, was a part of the twelve hundred dollars, paid by the brother of Christina Hamilton as aforesaid.

VII. That on September 5, 1865, in the consideration of the sum of seven hundred dollars paid by Christina Hamilton, Moses H. Young and Francis, his wife, did, by their deed duly executed and delivered, convey to Christina Hamilton, and to her heirs of her body, by her husband, A. Hamilton, the real property described in the complaint of the plaintiff herein as lots three, five and six, block two hundred and fifty-three, to have and to hold to her and her heirs by her then husband to her and their own proper use and benefit and behoof forever, free from all control of her said husband.

VIII. That on August 9, 1864, in consideration of the release to Thomas Robertson, by Christina Hamilton, of her right of dower in blocks two hundred and fifty-one and two hundred and fifty-two, in the town of Portland, state of Oregon, the said Thomas Robertson and Mary, his wife, did, by their deed duly executed and delivered, convey to said Christina Hamilton, and to her heirs of her body, by her said husband, A. Hamilton, the real property described in the complaint of the plaintiff herein, as lot four in block two hundred and fifty-three, to have and to hold to her said heirs as aforesaid, to her and their own separate use, benefit and behoof forever, free from all control of her said husband.

IX. That the defendant, Christina Hamilton, did not receive from any source or person other than her husband, during her marriage with the defendant, A. Hamilton, any money or property other than the sum of twelve hundred dollars as aforesaid, and that of said sum on or about the time of receiving the same, she loaned seven hundred dollars to the defendant, A. Hamilton, who invested the same in his own name in real property, namely, blocks two hundred and fifty-one and two hundred and fifty-two aforesaid, which property was subsequently and prior to the date of the deed aforesaid from Thomas Robertson and wife, taken on execution and sold to satisfy a debt of said defendant, A. Hamilton.

X. That on March 28, 1866, the defendant, Christina Hamilton, in pursuance of an act of the legislative assembly, approved June 4, 1859, did duly execute and cause to be recorded in the proper office in the county of Multnomah, state of Oregon, a declaration of her intention to hold, possess and enjoy in her own right and as her separate property, all the real property mentioned and described in the complaint of the plaintiff therein.

XI. That the defendants, A. Hamilton and Christina Hamilton, on September 4, 1866, were in the possession of the premises described in the complaint of the plaintiff herein, and have continued in the possession of the same up to the present time, and that the monthly value of the use and occupation of block two hundred and fifty, from September 4, 1866, was fifteen dollars, and of the lots in block two hundred and fifty-three, twenty dollars per month.

And as a conclusion of law from the premises aforesaid, the court finds that the plaintiff has no estate or interest in lots three, four, five and six in block two hundred and fifty-three described in the complaint herein, and is not entitled to the possession of the same or any part thereof, but that the same is the separate property of the defendant, Christina Hamilton, and was so since the date of the conveyance of the same to her as aforesaid, and further, that the plaintiff, since September 4, 1866, was seized of an estate for the life of the defendant, A. Hamilton, in block two hundred and fifty, described in the complaint herein, and that he is entitled to the possession of said block during the continuance of such estate, as against the defendant herein; and that said plaintiff is entitled to recover of the defendant, A. Hamilton, the sum of one hundred and forty-seven dollars for the use and occupation of said block since September 4, 1866, together with the costs and disbursements of this action to be taxed; and that he should have judgment accordingly.

W. W. Page, for plaintiff.
W. Lair Hill, for defendant.

DEADY, District Judge. By virtue of the sheriff's sale, on September 4, 1866, and the subsequent deed to the plaintiff, in pursuance

of the order confirming such sale, the plaintiff acquired all the estate or interest which the defendant, A. Hamilton, had in the real property described in the complaint at the time of such sale. What then was the interest, if any, of A. Hamilton in the property in question on September 4, 1866?

Block two hundred and fifty was conveyed to the wife, Christina Hamilton, on February 13, 1858. At that time the effect of marriage upon the property of the wife was regulated and prescribed in Oregon by the rules of the common law. By the common law, the husband, by reason of the marriage, became seized of a freehold estate in all the lands in which the wife had an estate of inheritance. White v. White, 5 Barb. 474, 481; Snyder v. Snyder, 3 Barb. 621; 2 Kent, Comm. 108; 2 Bac. Abr. 695, 705. This freehold estate, which the common law gave the husband in the lands of his wife, was his absolute property, as much as though it had been conveyed to him by his wife before marriage. It could be seized and sold on execution by the creditors of the husband. 2 Kent, Comm. 110.

But it is claimed on behalf of the defendant, Christina Hamilton, that the constitution of this state has worked a change in the law in this respect, which is applicable to this case. The constitution (article 15, § 5), provides: "The property and pecuniary rights of every married woman at the time of marriage, or afterwards acquired by gift, devise or inheritance, shall not be subject to the debts or contracts of the husband; and laws shall be passed for the registration of the wife's separate property." Independent of the constitutional provision, the property of the wife is not necessarily her separate property or estate. "The separate estate of a married woman is that alone of which she has the exclusive control and benefit, independent of the husband, and the proceeds of which she may dispose of as she pleases; and its character as such must be imparted to the property by the instrument (or power otherwise) by which she is invested with such right to it." Cord, Mar. Wom. §.225. The instrument by which block two hundred and fifty was conveyed to Christina Hamilton did not in any degree impart to it the character of separate property. It is but an ordinary deed, conveying the property to her and heirs by her husband, and contains no terms from which it can be inferred that it was the intention of the grantor to exclude the husband, as such, from the benefit and control of it. For aught that appears in the deed, the property was conveyed to the wife, subject to the general marital rights of the husband as then prescribed and defined by law. Looking then to the nature of the instrument by which block two hundred and fifty was conveyed to the wife, and the law as it stood at the time of such conveyance, there can be no doubt but that the husband then became seized of a freehold estate in the same, which could be taken on execution by his creditors. The fact that the purchase money was derived from the sale of the wife's real property in Missouri, which she inherited from her mother, does not affect the question. That was not her separate property. It was her general property and subject to the marital rights of her husband, at the time of the marriage in 1853. Moreover, by the sale of it in 1857, it was converted into personal property—money—and upon the receipt by him became the absolute and exclusive property of the husband.

The constitution went into force on February 14, 1859. What effect did it have upon the rights of the husband in this property? The constitution makes provision for the registration of the wife's separate property, but does not declare in express terms what shall be considered such separate property. The contemplated registration is not for the benefit of the wife, but for the protection of the public. Still it is evident that the constitution intended to change the law on the subject of the wife's property, and to change in favor of the wife. This being the case, it is the duty of the courts to give effect to such purpose so far as it can be ascertained with reasonable certainty. If the constitution had said, "The property and pecuniary rights of every married woman," etc., shall be deemed to be her separate property, or shall be held by her as her separate property, no doubt could arise as to the legal effect of the language employed. This would have imparted a particular character to her property, so far as enumerated in the constitution, however acquired; the effect of which would have been to have excluded her husband from all control over it or benefit in it. The language actually employed in the constitution is "shall not be subject to the debts or contracts of the husband." Taken in connection with the following clause, providing for the registration of the wife's separate property, I think these words ought to be construed, so far at least as third persons are concerned, as equivalent to a declaration that the property enumerated in section 5 shall be the separate property of the wife. If the wife's property is not to be "subject to the debts or contracts of the husband," he is thereby precluded from any control over it, and if he has any benefit or interest in it, it is beyond the reach of his creditors, for it is not "subject to his debts or contracts." This seems to be the conclusion of the supreme court of the state in Brummet v. Weaver, 2 Or. 168. Any narrower construction than this would defeat the evident intention of the constitution to change the law concerning the effect of marriage upon the wife's property in favor of the wife. If, notwithstanding the provision in the constitution, the husband, by reason of the marriage, is still invested with a freehold estate in his wife's lands, then it may be well said, as maintained by the plaintiff, that such estate—the property of the husband—may be taken on execution by the creditors of the husband, without conflicting with the provision in the

constitution concerning the property of the wife. Such a construction would leave the subject as it stood at common law, without giving any effect to the constitution whatever. For these reasons I think that the property of the wife, as enumerated or described in the constitution, ought to be considered her separate estate in the technical sense of that term —property over which the husband acquires none of the marital rights known to the common law.

At the time the constitution went into force and from the date of the conveyance to the wife, the husband had a freehold estate in block two hundred and fifty. This was a vested right. Could the constitution take it away from him and give it to the wife, or should it be so construed? The act of April 7, 1848, of the New York legislature, for the more effectual protection of the property of married women, so far as it related to existing rights of property, in married persons, was declared unconstitutional and void by the courts of that state. White v. White, 5 Barb. 474; Westervelt v. Gregg, 2 Kern. [12 N. Y.] 202. These decisions maintain, that the rights of the husband in the property of the wife at the time of the passage of the act were vested rights to property, of which he could not be deprived, except by due process of law—forensic trial and judgment. But this conclusion was put upon the ground of the prohibition contained in the constitution of the state of New York: "No person shall be deprived of life, liberty or property, without due process of law;" while in the case at bar, the enactment under consideration is a part of the constitution itself—the supreme law of the land.

Whether the people of a state in the formation and adoption of a constitution are omnipotent or not is an unsettled question. Probably they ought to be held so, in the same sense in which the English parliament is deemed omnipotent—as having power to "do everything that is not naturally impossible." 1 Bl. Comm. 161. They are for the time being the supreme sovereign power of the state, and the constitution is their direct, definite and permanent will, expressed in the form of a law. But I do not deem it necessary to pass upon this question, because I am satisfied that the provision in the state constitution was not intended and does not operate retroactively. It is a general and salutary rule of the common law, that "no statute is to have a retrospect beyond the time of its commencement" (6 Bac. Abr. 370); and this rule applies in the construction of a constitution as well as a statute. In the construction of statutes, courts are to take "as a leading guide, * * * the presumption that all laws are prospective and not retrospective," Dash v. Van Kleeck, 7 Johns. 486; and Kent, C. J. (Id. 502), says: "The very essence of a new law is a rule for future uses." The language of the constitution is in no sense retrospective. It declares a new and important rule of

property, as to married persons, and this rule, at least in the absence of express words to the contrary, should be construed as only intended to be applied to "future cases." I understand that the learned justice of the supreme court of the state from the Fourth district, has, on the circuit, construed this provision of the constitution as being prospective. I am not aware of any decision of the supreme court of the state on the subject. But I think the last clause of section 10, art. 18, of the constitution, confines the operation of this provision to future cases. Section 10 is the saving clause of the new constitution. It declares that the property and right of the territory and political subdivisions thereof shall remain "as if the change of government had not been made; and private rights shall not be affected by such change." The freehold estate of the husband in block two hundred and fifty was vested in him before and at the time this change was made. The enjoyment and ownership of this estate was then a private right in the husband—a right of property—and as such is protected by this saving clause, even if there was any doubt as to the true construction of article 15, § 5.

The registration of this property, on March 28, 1866, so far as block two hundred and fifty is concerned, availed the wife nothing. In fact she had no separate property in that block to protect by registration. The plaintiff having succeeded by purchase to the estate or interest of the husband in block two hundred and fifty, is entitled to the possession of the same. The duration of this estate is for the life of the husband, for although at common law, this estate might terminate with the death of the wife, for want of issue born alive, yet by our statute the husband is tenant by the courtesy, "although such husband and wife may not have had issue born alive." Gen. Laws, 1845–64, p. 717. As the defendants wrongfully withhold the possession from the plaintiff, he must have judgment against them accordingly, and against the defendant, A. Hamilton, for damages for the use and occupation of the property since September 4, 1866, according to the findings of the court. As to the lots three, four, five and six in block two hundred and fifty-three, the facts are different. They were conveyed to the wife after the constitution went into force, and by force of the constitution and the registration of March 28, 1866, must be held to be the wife's separate property, unless the following objections of the plaintiff or some of them are sufficient to take the case out of the constitution.

(1) The constitution can only apply to future marriages, for by the obligations of the marriage contract entered into before the constitution the husband was entitled to a freehold estate in all estates of inheritance which the wife might acquire during coverture.

(2) The property in these lots was acquired by purchase, and property acquired by the wife after marriage is not declared to be sep-

arate property by the constitution, unless acquired by gift, devise or inheritance.

(3) If these lots can be said to be acquired by gift, it was the gift of the husband to the wife, and on grounds of public policy the constitution should be so construed as to exclude such gifts from the category of separate property.

The first of these objections raises the question, long mooted, as to whether marriage is a contract within the provision of the national constitution which forbids any state from passing a law impairing the obligation of a contract. I do not think this objection well founded. Marriage has its inception in contract—the assent of the parties—but when established it becomes a relation. This relation is in no sense a contract. It is rather a civil institution, beyond the control or caprice of the parties to it, to be governed and regulated by law. This law, and not contract, regulates and prescribes the rights of the parties in the property of each other, and until these become vested interests, the legislative power may modify them from time to time, to suit the convenience and wants of society, or to promote the relation or to protect the parties to it. In my judgment the constitution should be construed, as applicable to marriages in existence when the constitution went into force, so far as the after acquired property of the wife is concerned. See White v. White, 5 Barb. 477, and Snyder v. Snyder, 3 Barb. 623.

The second objection is not free from difficulty. Strictly speaking the real property can only be acquired by purchase or descent. "Descent is the title whereby a person, upon the death of his ancestor, acquired the estate of the latter as his heir at law." Bouv. Law Dict. 448. The title to real property acquired in any other manner than by descent is title by purchase. The phrase in the constitution "by inheritance," is in legal parlance the exact equivalent of "descent." Title, or acquisition by gift or devise, is in law a title by purchase. The constitution cannot be construed to prevent the wife in any case from holding as her separate property that which she acquires during marriage by purchase in the legal sense of that term. It expressly includes acquisitions by gift or devise, and in law these are both deemed titles by purchase. But I suppose the constitution could not be construed to include property acquired by the wife by purchase in the popular sense—that is when the title was obtained for a valuable consideration moving directly from herself, unless the purchase consist as a matter of fact in the exchange or investment of already acquired separate property for some other. However, upon the facts, in my opinion, the title to these lots was not acquired by the wife by purchase in the popular sense. It must be presumed that the consideration proceeded directly from the husband. The wife had no separate property out of which to make the purchase. The seven hundred dollars which she loaned (as she calls it) her husband in 1857, was already his property by virtue of the marriage. The consideration paid for these lots being just seven hundred dollars, it is evident that as between the husband and wife the purchase was made for the purpose of returning to the latter the remainder of the money that he had acquired by the sale of her Missouri property. In this view of the matter, the transaction is substantially a gift to the wife from the husband.

The third objection assumes that a gift from the husband to the wife is against public policy. The language of the constitution is unqualified—property acquired by gift. As the law stood before the constitution, the husband could give property to his wife, though for other reasons it was necessary to resort to the intervention of a trustee. It should be remembered also, that in this case, there is no question of fraud or rights of creditors. The plaintiff claims as the purchaser of the husband, and only acquired the rights of the latter as against the wife. Where a husband in solvent condition and in good faith makes a gift to his wife, I know of no rule of law or principle of public policy that can be invoked to declare the same void. Besides, whatever may have been the law or public policy, I do not see how any court can presume to limit or restrict the language of the constitution, and hold that the unqualified words—acquired by gift—shall have effect only in the diminished sense—by gift from some person other than her husband. This would be legislation and not construction—and legislation on mere grounds of public policy, a matter for the law maker to determine and not the courts.

I am of the opinion, that the lots in block two hundred and fifty-three are a gift from the husband to the wife, and that by force of the constitution and the registration of March 28, 1866, they became the separate property of the latter. This being the case, the plaintiff acquired nothing by his purchase of the husband's interest at the sheriff's sale, for the simple reason that the latter had no interest in the property—at least no interest which could be the subject of levy and sale on execution.

In the consideration of lots in block two hundred and fifty-three, I have omitted to make special mention of lot four. The consideration for the conveyance of this lot to the wife was her release of her right of dower in certain other property of the husband's which had been taken and sold on execution. This right of dower was a mere contingency, depending upon whether the wife survived the husband or not. The estate of the tenant in dower is neither acquired by gift, devise or inheritance. The contingent right to dower in the lands of the husband, which the wife has during the life of the latter is a mere expectancy and cannot be called her separate property—if it can be termed property at all.

Money derived from the sale of such right becomes the property of the husband. When the husband joined with the wife in the release of the right of dower to Robinson, in consideration that Robinson then conveyed to the wife lot 4, I think he appropriated the proceeds or value of the right of dower to the purchase of that lot, and made a gift of it to the wife. See Dick v. Hamilton [Case No. 3,890].

It may also be noticed, that by the terms of the conveyance, granting the lots in block two hundred and fifty-three to the wife, it is provided that she shall hold them to her own separate use and benefit, and free from the control of her husband. Whether this form of conveyance was not sufficient to make this the separate property of the wife, independent of the provision of the constitution, I do not decide. The question was pressed upon the court by the counsel for the defendants, but the conclusion to which I have arrived renders it unnecessary to consider it.

Judgment must be given for the plaintiff, in accordance with the conclusion of law in the findings of the court.